*Exhibit C*

FILED
3/20/2017 12:00:00 AM
Beverly Crumley
District Clerk
Hays County, Texas

NO. 17-0576 _____

| | | |
|---|---|---|
| **THOMAS G. KEZAR AND SYLVA SHROYER KEZAR** | § | IN THE DISTRICT COURT |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | _____ JUDICIAL |
| | § | DISTRICT |
| | § | |
| **STATE FARM LLOYDS OF TEXAS/ STATE FARM LLOYDS, INC.** | § | |
| **Defendant.** | § | |
| | § | OF HAYS COUNTY, TEXAS |

### PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COME** Thomas G. Kezar and Sylva Shroyer Kezar, hereinafter called Plaintiffs, complaining of and about State Farm Lloyds of Texas/ State Farm Lloyds, Inc., hereinafter called Defendant, and for cause of action show unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1. Plaintiffs intend that discovery be conducted under Discovery Level 3.

### PARTIES AND SERVICE

2. Plaintiff, Thomas G. Kezar, is an Individual whose address is 1003 Hidden Hills, Dripping Springs, Texas 78620.

3. The last three numbers of Thomas G. Kezar's driver's license number are 860. Thomas G. Kezar has not been issued a social security number.

4. Plaintiff, Sylva Shroyer Kezar, is an Individual whose address is 1003 Hidden Hills, Dripping Springs, Texas 78620.

5. The last three numbers of Sylva Shroyer Kezar's driver's license number are 987. Sylva Shroyer Kezar has not been issued a social security number.

6. Defendant State Farm Lloyds of Texas/ State Farm Lloyds, Inc., a Corporation based in Texas, is organized under the laws of the State of Texas, and service of process on the Defendant may be effected pursuant to sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving the registered agent of the corporation, Mr. Fred Marsh/ Ms. Rendi Black, at 17301 Preston Road, Dallas, Texas 75252, its registered office. Service of said Defendant as described above can be effected by certified mail, return receipt requested.

### JURISDICTION AND VENUE

7. The subject matter in controversy is within the jurisdictional limits of this court.
8. Plaintiffs seek:
   a. monetary relief over $200,000 but not more than $2,000,000.
9. This court has personal jurisdiction herein because Defendant is a Texas resident.
10. Venue in Hays County is proper in this cause pursuant to Section 17.56 of the Texas Business and Commerce Code because Defendants, State Farm Lloyds of Texas/ State Farm Lloyds, Inc., solicited the insurance policy (written contract) made the subject of this action. Venue in Hays County is proper in this cause pursuant to Section 15.002(a)(1) of the

Texas Civil Practice and Remedies Code as this is the county in which all or a substantial part of the events or omissions giving rise to these claims occurred. Venue in Hays County is mandatory in this cause pursuant to Section 15.011 and Section 15.032 of the Texas Civil Practice and Remedies Code as this is the county in which the property is located for this suit seeking recovery of damages to real property and where the insured property was situated.

**FACTS**

11. Plaintiffs' residence was damaged by fire on or about August 16, 2015 which damaged several rooms with smoke and water damage throughout the residence. Plaintiffs were not at the residence at the time of the fire but the house sitter did have the air conditioning unit running at the time of the fire. Plaintiffs were on a vacation cruise in Europe. Plaintiffs filed a claim designated as State Farm Insurance Claim #536X93732.

12. Defendant's agent, Jay Vath, meeting with Plaintiffs' daughter shortly after the fire stated he would likely not be handling the claim investigation as his company claim limit was only $200,000 and the damage would likely exceed that amount. Despite this statement, Jay Vath, Defendant's agent, provided a claim estimate and proposed settlement on September 24, 2015 in the amount of $135,774.46. Shortly thereafter, Plaintiffs notified Defendant the claims estimate was severely lacking due to failure to account for water and smoke damage throughout the residence.

13. Defendant recommended Blackmon Mooring for remediation of fire damaged personal property. Plaintiff's daughter relying on Defendant's recommendation agreed to having Blackmon Moooring attempt to remediate items including home appliances (which we know now should not have been included) and clothing known to be beyond remediation.

14. Plaintiffs engaged the services of this counsel on December 1, 2015 to represent them in this claim. On December 4, 2015, Plaintiffs' counsel retained the services of Rimkus Consulting Group, Inc. to conduct a fire particulate assessment and remediation protocol on the subject property. Rimkus concluded the following: Fire debris and effluent staining was noted in every room; Significant fire damage was noted in the attic; Electrical wire damage, interior wall damage, and insulation damage throughout was noted; and mold growth was noted in the Master Bath and likely hidden within walls and under cabinets affected by fire suppression water. Upon the recommendation of the particulate expert, Rimkus was further retained to conduct a structural evaluation. Rimkus concluded in their March 4, 2016, report: structural damage in the east side of the master bedroom, sitting room, and adjacent bedroom; large structural members suffered char damage; and dry ice remediation for smoke and char damage was recommended. These reports were shared with Defendant.

15. During this time, Plaintiffs were forced to repeatedly contact Defendant to repair damaged tarp and roof covering to try to mitigate further damage. Due to Defendant's failure to timely respond substantial rainfall entered the already damaged residence compounding the damages.

16. Plaintiffs contacted a reputable home builder from the area for an estimate and provided Defendanat the estimate from the builder, and the Rimkus reports. The estimate from the home builder was $277,411.50 not including the Rimkus report charges of almost $10,000,

demolition bid of $29,877.00, and dry ice remediation bid of $11,366.25. The total here without personal items was $328,654.75.

17. Plaintiffs' counsel contacted Defendant on April 16, 2016 providing the above information and requested a meeting to discuss settlement. Defendant's next response to Plaintiffs was June 24, 2016 when Defendant demanded appraisal under Section I- Conditions and therein named Bryan Scanlan of ICC Group as Defendant's appraiser. Plaintiffs timely responded on July 14, 2016 naming Mr. Chris Lackey as their appraiser.

18. On August 2, 2016, Plaintiffs' counsel wrote and faxed a letter stating, "On June 24, 2016, you faxed me a demand for appraisal of Claim No. 53-6X93-732 under the referenced Homeowners Policy issued by State Farm. In your letter/fax you stated appraiser Bryan Scanlan was appointed to represent State Farm in the appraisal process. On July 14, 2016, the 20th day following your letter demanding appraisal, we faxed your office and your named appraiser our letter appointing Mr. Chris Lackey, Public Adjuster, CPAU, Texas License 1735661, NPN: 15754253 as our appraiser. Mr. Lackey contacted Mr. Scanlan the following day, and Mr. Scanlan stated he had not received any notification by you or State Farm of his appointment for this claim. On or about Monday, July 18, 2016, in response to numerous voice mails I left (by Plaintiffs' Counsel), you claimed you did not receive our fax, that your failure to timely receive the fax was normal at your office, and that you were in possession of our letter dated July 14, 2016. Today I contacted our appraiser, Mr. Lackey, to inquire whether any progress had been made on the appraisal. Mr. Lackey again contacted Mr. Scanlan who, again, stated he has not been notified by your firm of the appointment." On August 10, 2016, Defendant's agent Vath responded by letter stating, "Attached please find a copy of the Assignment letter to State Farm Appraiser, Mr. Bryan Scanlan with ICC Group.". The referenced attached assignment letter, which was dated August 10, 2017, is the first evidence of assignment of the claim to Mr. Scanlan, and contradicts Agent Vath's June 24th letter claiming appointment of Mr. Scanlan as appraiser. The appraisers met at the property for inspection on August 23, 2016. Mr. Scanlan, on or about December 7, 2016, stated to Mr. Lackey, Plaintiffs' appraiser, he was almost through with his estimate.

19. Plaintiffs' counsel was contacted by their appraiser, Mr. Lackey, on March 17, 2017, stating Plaintiffs needed make the house available for a contractor, representing Mr. Scanlan and State Farm, to come and look at the subject house on Monday, March 20, 2017. Mr. Lackey further advised that he and State Farm's appraiser, Mr. Scanlan, are scheduled to meet with the Umpire on March 23, 2017 despite the fact no appraisal has been forthcoming from Mr. Scanlan or State Farm.

20. Plaintiffs and Defendant agreed on a homeowner's policy #83-CO-5680-9 effective for 12 months beginning March 23, 2015. The dwelling, covered by A1 Replacement Cost- Similar Construction, was insured for $347,800 plus additional extension of $34,780. Personal property was insured for $260,850. Loss of use was insured for Actual Loss Sustained not to exceed 24 months.

**COMMON LAW FRAUD**

29. Plaintiffs further show that Defendant made material false representations to

Plaintiffs with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiffs, and that Plaintiffs relied on these representations to their detriment.

30. Plaintiffs would further show that Defendant concealed or failed to disclose material facts within the knowledge of Defendant, that Defendant knew that Plaintiffs did not have knowledge of the same and did not have equal opportunity to discover the truth, and that Defendant intended to induce Plaintiffs to agree to a settlement transaction made the basis of this suit by such concealment or failure to disclose.

31. As a proximate result of such fraud, Plaintiffs sustained the damages described more fully hereinbelow.

32. Plaintiffs would show that Defendant's actions constituted fraud.

## NEGLIGENCE

33. In the dealings and transactions between Plaintiffs and Defendant, Defendant owed Plaintiffs a duty to undertake a good faith effort to effectuate a prompt, fair, and equitable settlement of a claim when Defendant's liability has become reasonably clear.

34. Plaintiffs would show that Defendant failed to exercise ordinary care in performing such duty. The acts and/or omissions of Defendant described hereinabove by which Defendant breached such duty constitute a proximate cause of the damages of Plaintiffs described more fully hereinbelow, for which Defendant is liable to Plaintiffs.

35. Plaintiffs would show that Defendant's actions constituted malice and gross negligence.

## BREACH OF CONTRACT

36. Plaintiffs would further show that the actions and/or omissions of Defendant described hereinabove constitute breach of contract, which proximately caused the direct and consequential damages of Plaintiffs described hereinbelow, and for which Plaintiffs hereby sue.

## UNFAIR CLAIM SETTLEMENT PRACTICES

37. Plaintiffs would further show that the actions and/or omissions of Defendant constitute unfair claim settlement practices in that Defendant:

   (a) failed to acknowledge with reasonable promptness pertinent communications relating to a claim arising under Defendant's insurance policy,
   (b) failed to adopt and implement reasonable standards for the prompt investigation of claims arising under Defendant's insurance policy,
   (c) did not attempt in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear,
   (d) compelled Plaintiffs, policy holders of Defendant, to institute a suit to recover an amount due under a policy by offering substantially less than the amount expected to be recovered in this suit.

## ECONOMIC AND ACTUAL DAMAGES

38. Plaintiffs sustained the following economic and actual damages resulting from the actions and/or omissions of Defendant described hereinabove:

   (a) Cost of replacement.
   1) Personal Items - $257,463.94
   2) Misc. Personal Items - $6,716.23
   3) Hearing Aids - $2,599.98

    (b)      Interest and/or finance charges assessed against and paid by Plaintiffs.
              1) interest on loan from Security State Bank and Trust - $12,000

    (f)      Costs of repairs.
              1) Lackey estimate for dwelling damages - $377,962.28

    (g)      Remedial costs and/or costs of completion.
              1) remediation of personal items/storage – Blackmon Mooring $90,768.99

    (h)      Reasonable and necessary engineering or consulting fees.
              1) Rimkus reports - $8177.19
              2) Mr. Chris Lackey, appraiser - $5,000
              3) Mr. Jeremy Settles, umpire - $2,500

    (i)      Reasonable expenses of temporary housing.
              1) Renovation of Outbuilding for after 2 year additional living expenses expire - $86,573.21.

    (j)      interest on the amount of the claim.
              1) interest @ 18% since claim occurrence through date of filing - $193,875.15

    (k)      expenses
              1) travel from Europe due to interruption of vacation and immediate cost of living expenses - $11,476.97
              2) Texas Community Propane $3,527.52
              3) Hays County WCID #2 - $3,360
              4) legal fees to protest property valuation with HCAD $500

    (l)      mental anguish – past and future
              1) medical treatment $5,271

    (m)      diminished or reduced market value
              1) 37,796.22 for reduced value for disclosure of fire and fungus damage

    (n)      legal fees
              1) to date $129,375.00 (86 weeks/6 hrs.per week/$250/hour)

    (o)      loss of time
              1) correspondence with Citimortgage regarding delay of reconstruction – Legal fees $1,000

## EXEMPLARY DAMAGES

42.    Plaintiffs would further show that the acts and omissions of Defendant complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendant at the expense of

Plaintiffs. In order to punish said Defendant for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiffs also seek recovery from Defendant for exemplary damages as provided by Section 41.003(a) of the Texas Civil Practice and Remedies Code.

## ATTORNEY'S FEES

43. Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Section 17.50(d) of the Texas Business and Commerce Code; (b) Section 541.152(a)(1) of the Texas Insurance Code; (c) common law; and, (d) Section 542.060(b) of the Texas Insurance Code.

## INTEREST

44. Request is made for prejudgment and post-judgment interest at the annual rate 18% interest for all unpaid claims, expenses, and damages.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, Thomas G. Kezar and Sylva Shroyer Kezar, respectfully pray that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendant for the economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and postjudgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiffs may be entitled at law or in equity, whether pled or unpled.

Respectfully submitted,

RANDALL ROBINSON LAW FIRM, INC.

By: */s/Randall Robinson*
Randall Robinson
Texas Bar No. 24051955
Email: randall@randallrobinsonlaw.com
500 E. Wallace, Suite 203
San Saba, TX 76877
Tel. (325) 372-3747
Fax. (503) 334-4367
Attorney for Plaintiffs
Thomas G. Kezar and Sylva Shroyer Kezar

**PLAINTIFFS HEREBY DEMAND TRIAL BY JURY**